STANDARD OIL COMPANY OF CALIFORNIA, a Delaware corporation, Plaintiff-Appellee, Cross-Appellant, v. HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., a Hawaii corporation, Defendant-Appellant, Cross-Appellee

NO. 7111

CIVIL NO. 48381

AND

AIR SERVICE CORPORATION, UNIVERSAL ENTERPRISES, dba ASSOCIATED AVIATION ACTIVITIES AND SOUTHERN MARINE & AVIATION UNDERWRITERS, INC., Plaintiffs-Appellees, v. HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., a Hawaii corporation, Defendant-Appellant

NO. 7331

CIVIL NO. 50084

SEPTEMBER 29, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

## OPINION OF THE COURT BY PADGETT, J.

These consolidated cases involve an appeal and a cross-appeal from a summary judgment entered below against Hawaiian Insurance & Guaranty Company, Ltd. (hereinafter referred to as "HIG"). Essentially, two questions are involved: The first is whether HIG had a duty to defend Air Service Corporation (hereinafter referred to as "ASC") and Associated Aviation Activities (hereinafter referred to as "AAA") and Standard Oil Company of California (hereinafter referred to as "SOCAL") under a comprehensive general liability policy which included coverage for negligence in the maintenance of a fuel truck, including the loading and unloading thereof. The second is whether, assuming there was a duty to defend, the court below properly allocated the expenses of defense and settlement as between HIG on the one hand and the other parties on the other when HIG refused to defend the lawsuits in question.

In order to deal with the issues raised on the appeal and cross-appeal, it is necessary to make a statement as to the facts of the case. In doing so, however, we are considerably hampered by the fact that, as is all too common in the practice of law before our courts, neither the parties nor the court below paid the slightest bit of attention to the requirement in Rule 56 that documents used in support of or in opposition to a motion for summary judgment should be sworn to or certified. However, because the parties stipulated to the court below taking judicial notice of certain files and because there appears to be a general agreement as to other matters, the facts, as we understand them, are as follows:

On May 20, 1973, an airplane piloted by Dr. Robert C. H. Chung and carrying as passengers George and Myrtle Chappel and Duane,

Tamarah Sue and Marcia Lynn Archer crashed near the Honolulu Airport, killing all on board. Dr. Chung, in his transmissions to the Honolulu International Airport tower, indicated that while he had done what was necessary to lower the airplane's landing gear, the panel light indicated the gear was not down. He was instructed to do a fly-by and told that the gear was down. However, at this point, the light was still on and the gear klaxon warning was sounding. Shortly thereafter, the left engine failed and subsequently, the crash occurred. An investigation indicated contaminants in the fuel strainer of the left engine which had failed. This may have been *the* cause or one of the causes of the crash. The tanks feeding the left engine had been fueled from a truck owned by SOCAL. The fuel was apparently supplied to the aircraft by AAA although the truck may have been, in fact, operated by ASC. The fuel which was in the truck was supplied by SOCAL. There is no clarity in the record as to the division of responsibility for the maintenance of the fuel truck between AAA and ASC on the one hand and SOCAL on the other. There are strainers and other devices on the truck which, if properly maintained and used, are supposed to prevent contaminants, if they exist in the fuel, from getting into the airplane tanks. Contaminants in the fuel, of course, can cause engine failure.

On December 3, 1973, heirs and executors of the Chappels and Archers filed Civil Nos. 40848 and 40849, respectively, alleging various theories of negligence and products liability against Dr. Chung's estate and unnamed Doe defendants. On September 9, 1974, ASC was identified as a Doe defendant. AAA was so identified on February 20, 1975 and SOCAL on June 30, 1975. However, prior thereto, ASC had been joined as a third-party defendant in Nos. 40848 and 40849. Service had been made upon it and ASC had forwarded the third-party complaint to HIG. Because of HIG's lack of action, defaults were entered, but they were subsequently set aside as a result of a stipulation between the third-party plaintiff's attorneys and HIG's attorneys. Thereafter, HIG forwarded the actions to Southern Marine and Aviation Underwriters, Inc. whose attorneys defended them on behalf of ASC and AAA. When the Chung action was filed, ASC and AAA forwarded the complaint to HIG which forwarded it to Southern Marine whose attorneys took over the defense of that action also.

The three actions were consolidated and on June 27, 1975, pursuant to stipulation, ASC and AAA brought in SOCAL as a third-party defendant. In that third-party complaint, ASC and AAA alleged:

Furthermore Standard Oil rented to Air Service and/or Associated Aviation Activities an aviation refueler truck in which to dispense said gasoline or fuel. In connection therewith Standard Oil assumed certain obligations and duties in connection with the maintenance and upkeep of the truck and its components.

4. If plaintiffs in said Civil Numbers have sustained injuries and damages as alleged, said injuries and damages were caused by the negligence, breach of contract, breach of warranty, breach of strict tort liability, or other fault of Standard Oil and Air Service and/or Associated Aviation Activities were in no way at fault.

This pleading, for the first time, specifically linked the refueler truck to the alleged negligence which caused the accident.

This is significant because HIG had issued a policy which covered the refueler truck for comprehensive general liability arising out of the maintenance thereof and under which policy ASC, AAA and SOCAL were insureds. That policy provided:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

C. bodily inuury or

D. property damage

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if the allegations of the suit are groundless, false or fraudulent, . . .

Such policy also provides under *Conditions:*

If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

According to the return of service, when ASC was identified as a party defendant in Nos. 40848 and 40849, service was made upon

George W. Playdon, Esq., the attorney who had been retained by HIG to set aside the default in those cases. The later service upon AAA after its identification on the record was upon one of its officers. The record does not reflect that AAA sent a copy of the summons and process served upon it to HIG.

SOCAL was served with the third-party complaint on June 30, 1975 and on the same day was served with the summons and process identifying it as a party defendant. SOCAL did not immediately forward to HIG the summons or process received by it. We have found nothing in the record which establishes one way or the other, whether SOCAL did or did not know that it was an insured under HIG's policy issued to ASC. (The unsworn and uncertified alleged copy of the HIG policy attached to appellant's memorandum in opposition to the motion for summary judgment in the court below contains "certificates" addressed to SOCAL, but whether they are genuine and were sent and received is not established.)

Between June 30, 1975 and January 13, 1976, a great deal of activity in the litigation took place. For example, out of the 13½ volumes in the record in Civil 40848, some five volumes are comprised of documents filed during that period.

It was not until January 13, 1976 that SOCAL, through its attorneys, tendered the defense of the actions to HIG as SOCAL's insurer. On January 28, 1976, HIG replied in writing, taking the position that the case was a products liability case and that there was no coverage under the comprehensive liability policy. Further correspondence followed from the attorneys for SOCAL and ASC and AAA but no further written response was received from HIG.

In March of 1976, after the trial had begun, ASC and AAA settled with the Archers, Chappels and Chungs for a total amount of $175,000 and SOCAL settled with them for a total amount of $200,000. After the settlements were effectuated, the two present lawsuits were filed. ASC and AAA, together with Southern Marine and Aviation Underwriters, Inc., their carriers who had supplied the defense and the money, sued HIG for the $175,000 paid on settlement and for costs, expenses and attorney's fees of $74,451.86. SOCAL sued for the $200,000 it had paid out and for attorney's fees of $92,814.80, expert's fees of $14,022.40 and miscellaneous costs and expenses of $17,466.66.

On March 28, 1977, SOCAL moved for a partial summary judgment:

> that the insurance policy issued by Defendant [HIG] provides insurance coverage of Plaintiff's [SOCAL] claim ... on the grounds that there is no genuine issue as to any material fact and that Plaintiff is entitled to a judgment on that issue as a matter of law, reserving the other issues set forth in the complaint and in Defendant's answer to complaint.

On May 31, 1977, ASC and AAA filed a motion for summary judgment in their favor and against HIG:

> to declare that there would have been coverage under the HIG Policy for the claims of Plaintiffs Archers and Chungs in Civil Nos. 40849, 40848 and 44402 and therefore HIG had a duty to defend and now has a duty to pay for the settlement of those cases.

HIG responded with a lengthy memorandum in opposition to SOCAL's motion, attaching numerous exhibits, none of which were certified. In the memorandum, HIG asserted a claim of late notice, which it previously set up as a defense in its answers, contending that SOCAL did not inform it of the suit against it until January of 1976 "literally on the eve of trial". (Of course, the notice was not literally on the eve of trial since trial, according to the January 13, 1976 letter, was then set for February 16, 1976. It actually apparently commenced early in March.)

In response to SOCAL's motion for summary judgment, HIG filed a memorandum raising the same contention of lack of adequate notice as well as other issues.

> In reply, on June 14, 1977, SOCAL filed a memorandum stating:
>> SOCAL did not intend to include the question of notice given HIG within its Motion for Partial Summary Judgment. SOCAL does not believe that its motion, if granted, would affect HIG's right to adjudicate the issue of timeliness of notice at a later date, ...

On the same day, the first hearing before Judge Fong on the motions for summary judgment was conducted and he asked the parties for further memoranda on the question of the duty to defend as distinguished from the issue of coverage. The parties filed further memoranda on that subject on July 5 and 6, 1977 and a further hearing was held on July 14.

In the course of that hearing, HIG's counsel argued the notice question and asserted that it was part of the motion even though ASC's and AAA's counsel orally took the position that it was not. The court ruled that having denied coverage, HIG could not, as a matter of law, raise the question of late notice.

On August 1, the court entered its order granting the motions for partial summary judgment. HIG moved to strike the same on August 4, not raising any question with respect to the ruling as to waiver of the right of notice and on September 23, the court entered an order denying that motion. On January 20, HIG moved for a trial continuance which was subsequently denied by order filed February 7, 1978.

On February 3, 1978, HIG changed counsel. On February 13, SOCAL, through its attorneys and ASC and AAA, through their attorneys filed motions for summary judgment on the damage issue (which had been left open by the previous order). On February 21, HIG filed a motion for summary judgment and a motion for reconsideration with respect to liability, attaching an affidavit of Francis William Souza, Jr., assistant claims manager of HIG, stating, among other things, that on January 26, 1976, two days before HIG's letter denying coverage, he had informed SOCAL's attorneys that HIG could not accept the tender of the defense, one of the principal reasons being the fact that the tender was being made too late.

By this point, the case had been shifted from Judge Fong to Judge Shintaku who ultimately denied the motion for reconsideration. On May 2, 1978, the court entered an order for summary judgment, awarding to ASC and AAA $124,725.93, being one-half of $249,451.86 claimed in the complaint (which was the total of $175,000 paid out in settlement and $74,451.86 in attorney's fees and expenses). ASC and AAA thereupon moved for the award of attorney's fees in the instant case, pursuant to HRS § 431-455. HIG opposed the motion but while it was pending filed a notice of appeal of the order for summary judgment despite the fact that SOCAL's case against HIG had been consolidated with ASC's and AAA's case against HIG by court order in February of 1977. The court subsequently approved fees for ASC and AAA in the amount of $15,200 and another notice of appeal was filed.

With respect to SOCAL, on November 22, 1978, the court below

entered an order granting SOCAL its motion for award of attorney's fees and costs of suit in the present case in the amount of $40,770.57 and denying any award of pre-judgment interest. On the same day, an order granting summary judgment was entered. It granted SOCAL $161,426.61, being one-half of the amount of $200,000 paid in settlement plus attorney's fees and costs in the amount of $122,853.21. Incorporated in this order was the denial of the motion for reconsideration. The same day, a judgment for the amounts set forth was entered from which appeal was duly taken. The transcript, of the March 7, 1978 hearing before Judge Shintaku reveals that he made the apportionment in each case, one-half to each side based upon a clause in the HIG insurance policy which read:

6. *Other Insurance:* The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) *Contribution by Equal Shares.* If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) *Contribution by Limits.* If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such

loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

In its appeal, HIG urges that the court below erred in denying its motion for reconsideration; erred in granting summary judgment in favor of ASC, AAA and SOCAL on the issue of the duty to defend; erred in holding that it had waived the notice requirement in the policy as to those parties; erred in denying it summary judgment contending in this connection that there was no coverage, no duty to defend and no timely notice; and erred in granting attorney's fees in connection with the present actions, contending that HRS § 431-455 is inapplicable in the present circumstances. SOCAL cross-appeals from the apportionment between it and HIG on a 50/50 basis, contending that it had no other insurance and that, therefore, there was no basis for the apportionment. ASC and AAA filed no appeal.

We affirm the orders below with the exception of the apportionment between SOCAL and HIG which we reverse.

The policy in question is entitled "An Automobile Policy." It names ASC, AAA and, by rider, SOCAL, as insureds with respect to what is described as a tank truck.

When ASC was joined as a third-party defendant in 40848 by the Chung estate, the third-party complaint alleged among other things,

Defendant Air Service and Does IV through VI, their agents, servants and employees in inspecting, servicing, maintaining and repairing the subject aircraft and in failing to detect and remove blockages and obstructions to the flow of fuel into the engines and said Defendant Air Service and Does IV through VI were otherwise negligent and careless.

ASC forwarded the complaint to HIG. Again, when the Chung estate filed suit, there were similar but more specific allegations with respect to negligence in servicing and in providing fuel by ASC and AAA and that complaint was also forwarded to HIG.

Obviously, ASC and AAA considered that the suit was one which potentially sought damages within the coverage of the policy, and it did.

As was said in *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 419 P.2d 168 (1966) at 176 of 419 P.2d:

We point out that the carrier must defend the suit which poten-

tially seeks damages within the coverage of the policy; the Jones action was such a suit.

Defendant cannot construct the formal fortress of the third-party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable. . . . courts do not examine only the pleaded word but the potential liability created by the suit. Since the instant action presented the potentiality of a judgment based upon nonintentional conduct, and since liability for such conduct would fall within the indemnification coverage, the duty to defend became manifest at the outset.

And as *Gray, supra,* points out, if a carrier refuses to defend when it has the duty to do so, it becomes liable for the expenses incurred in defense including attorney's fees by its insured and for the amount of any judgment or, as in this case, for the amount of the settlements. It cannot, having refused to defend, shift the burden of establishing whether the judgment or settlement was the result of the covered risk or a noncovered risk to the insured.

Here, the correspondence in January of 1976 made manifest the fact that HIG would not participate in the defense.

HIG claims, however, that it did not receive notice of the fact that it was negligence by its insureds in the maintenance of the truck that was being claimed to be a cause of the accident until the letter of January 13, 1976 from SOCAL's attorneys and that the delay between the time that was made explicit in the pleadings in mid-1975 and SOCAL's notice to HIG in January of 1976 was fatal to the appellees' cases.

We cannot agree. The first of the insureds to be joined was ASC. It promptly forwarded the pleadings served upon it to HIG. Under those pleadings, there was a potential liability for the covered risk (negligence in the maintenance of the truck, including loading and unloading) and HIG was on notice of that fact from that point on. Had it defended that risk and participated in the proceedings, it would have had notice of the fact that the truck was being specifically pointed to just as soon as that fact turned up. The insured is required by the policy to give notice and forward the pleadings to the insurer. ASC and AAA did so. We do not think the result is changed by the fact that an additional insured was brought into the case by a later pleading and no additional notice was sent to HIG. HIG was already on notice of the potentiality with respect to the risk insured against

and the joinder of an additional insured in the proceedings did not increase or change HIG's potential liability at all.

Thus, we see no need to discuss either the effect of § 287-29(1), HRS, upon the question of notice or the question of waiver of notice. The orders granting summary judgment to the insureds are accordingly affirmed.

As to the effect of § 431-455, HRS, we think it clear that it covers this case and the court below was correct in ordering the payment by HIG of the costs and attorney's fees incurred in prosecuting this action.

As to SOCAL's cross-appeal, we reverse the 50/50 apportionment of SOCAL's settlement and litigation expenses decreed by the court below. The policy provides for such an apportionment when there is other insurance. There was no other insurance. Had HIG wished to cover the matter of self-insurance, it should have done so in clear language. As pointed out in *Gray, supra,* insurance contracts are contracts of adhesion and as the Supreme Court of Hawaii has held, they are to be liberally construed in favor of the insured and against the insurer. *Masaki v. Columbia Casualty Co.,* 48 Haw. 136, 395 P.2d 927 (1964); *State Farm Mutual Automobile Ins. Co. v. Bailey,* 58 Haw. 284, 568 P.2d 1185 (1977). Affirmed in part and reversed in part and remanded for entry of judgment in accordance herewith.

*Berton T. Kato (Kobayashi, Watanabe, Sugita & Kawashima* of counsel) for appellant/cross-appellee Hawaiian Insurance & Guaranty.

*Wesley W. Ichida (Warren J. Senda* on the briefs, *Case, Kay & Lynch* of counsel) for appellee/cross-appellant Standard Oil Company.

*James F. Ventura (Libkuman, Ventura, Moon & Ayabe* of counsel) for appellees Air Service, Associated Aviation and Southern Marine & Aviation Underwriters.