STANDARD OIL COMPANY OF CALIFORNIA, a Delaware Corporation, Plaintiff-Appellee, Cross-Appellant, *v.* HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., a Hawaii corporation, Defendant-Appellant, Cross-Appellee

(CIVIL NO. 48381)

AND

AIR SERVICE CORPORATION, UNIVERSAL ENTERPRISES dba ASSOCIATED AVIATION ACTIVITIES AND SOUTHERN MARINE & AVIATION UNDERWRITERS, INC., Plaintiffs-Appellees, *v.* HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., a Hawaii corporation, Defendant-Appellant

(CIVIL NO. 50084)

NO. 7111

DECEMBER 8, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MENOR ASSIGNED TEMPORARILY

*Per Curiam.* The plaintiffs-appellees brought suit against defendant-appellant Hawaiian Insurance & Guaranty Company, Ltd. (hereinafter also "HIG") to recover damages they allegedly sustained when HIG failed and refused to defend actions brought against them by the heirs and executors of the pilot and the passengers of a plane which crashed on May 20, 1973. In the circuit court, HIG raised as one of its principal defenses the failure to give notice as required by the insurance contract. The trial court disposed of this contention by ruling that HIG had waived notice. On appeal, the intermediate court of appeals held that it was unnecessary for it to reach the question of waiver, inasmuch as it was satisfied from the record that HIG had been given notice as required by the insurance agreement. 2 Haw. App. 451, 634 P.2d 123 (1981). We granted certiorari for the purpose of determining whether the appeals court erred in holding as a matter of law that HIG had been properly and seasonably notified.

## I.

The airplane crash claimed the lives of the pilot, Dr. Robert C. H. Chung, and his passengers, George Chappel, Myrtle Chappel, Duane Archer, Tamarah Sue Archer, and Marcia Lynn Archer. The failure of the left engine to function had caused the aircraft to plummet to the ground. Investigation revealed that contaminants in the fuel strainer of the left engine may have been a cause of the engine failure. The tanks feeding the engine had been fueled from an aviation refueler truck covered by a liability insurance policy issued by HIG for the benefit of plaintiffs-appellees, Standard Oil Company of California (hereinafter "SOCAL"), Air Service Corporation (hereinafter "ASC"), and Universal Enterprises dba Associated Aviation Activities (hereinafter "AAA").

On December 3, 1973, the heirs and executors of the Chappels and the Archers filed suit in circuit court (Civil Nos. 40848 and 40849, respectively) against Dr. Chung's estate and unnamed Doe defendants. The complaints alleged various theories of negligence and products liability. On February 22, 1974, ASC was brought in by the Chung estate as a third-party defendant in said Civil Nos. 40848 and 40849. After being served with process, ASC forwarded the same to HIG. In its letter of transmittal ASC wrote HIG: "We trust

that you will take the necessary steps for our legal representation." Because of HIG's lack of action, however, defaults were entered against ASC. These defaults were later set aside as a result of a stipulation between the Chung and HIG attorneys. Thereafter, HIG transmitted the legal documents to Southern Marine and Aviation Underwriters, Inc. (hereinafter "Southern Marine"), whose attorneys subsequently defended against the suits on behalf of ASC and AAA. This was apparently done pursuant to an aviation liability insurance policy which had been issued to ASC and AAA by Southern Marine. On September 13, 1974, ASC was identified as a Doe defendant by the plaintiffs in Civil Nos. 40848 and 40849. AAA and SOCAL were respectively identified as Doe defendants by said plaintiffs on February 20, 1975, and on June 30, 1975.

On February 27, 1975, the Chung Estate filed its own suit (Civil No. 44402). ASC and AAA were made party defendants in this action and were served with process on March 7, 1975. ASC and AAA forwarded the complaints and summonses to HIG which in turn forwarded them to Southern Marine whose attorneys also took over the defense of that action. In her letter of transmittal, ASC's executive secretary wrote to HIG: "We submit these to you for proper action."

Civil Nos. 40848, 40849, and 44402 were later consolidated. On June 27, 1975, pursuant to stipulation, SOCAL was brought in as a third-party defendant in all three cases by ASC and AAA. In their third-party complaint, ASC and AAA alleged:

> Furthermore Standard Oil rented to Air Service and/or Associated Aviation Activities an aviation refueler truck in which to store the gasoline or fuel provided and by which to dispense said gasoline or fuel. In connection therewith Standard Oil assumed certain obligations and duties in connection with the maintenance and upkeep of the truck and its components.
>
> 4. If plaintiffs in said Civil Numbers have sustained injuries and damages as alleged, said injuries and damages were caused by the negligence, breach of contract, breach of warranty, breach of strict tort liability, or other fault of Standard Oil and Air Service and/or Associated Aviation Activities were in no way at fault.

This was the first time the refueler truck was specifically linked to

the cause of the accident. SOCAL was served with the third-party complaint and summons on June 30, 1975, but did not immediately forward them to HIG. Only on January 13, 1976, did SOCAL, through its attorneys, tender the defense of the actions to HIG as SOCAL's insurer. On January 28, 1976, HIG replied in writing, taking the position that the case was strictly a products liability case. In its letter, HIG advised SOCAL's attorneys: "Based on the pleadings, our policy, which covers only Comprehensive Automobile liability, does not apply and therefore, we decline your tender to undertake the defense of Standard Oil under our policy."[1]

With HIG's refusal to defend the actions, Southern Marine undertook the defense. After the trial had commenced, SOCAL, ASC, and AAA settled with the Chungs, Chappels, and Archers. On May 21, 1976, SOCAL filed suit against HIG in circuit court (Civil No. 48381) for damages it sustained as a result of HIG's refusal to defend. A similar suit was filed by ASC, AAA, and Southern Marine on December 2, 1976 (Civil No. 50084). These two cases were later consolidated.

On March 28, 1977, SOCAL moved for partial summary judgment. ASC, AAA and Southern Marine filed their motion for summary judgment on May 31, 1977. Plaintiffs-appellees urged the circuit court to find as a matter of law that HIG had a duty to defend under the insurance policy, leaving open the issue of damages. HIG contended in its memorandum opposing the motions, as it did in its answer to the complaints, that it received late notice of the actions.

The circuit court granted the motions and found: "That having refused to defend ASC and SOCAL on the grounds of noncoverage,

---

[1] Further correspondence followed from the attorneys for SOCAL, ASC and AAA but no further written response was received from HIG. However, the affidavit of HIG's former senior claims supervisor, filed in support of HIG's motion for summary judgment, alleged:

During the processing of the Plaintiffs' claims, your affiant on numerous occasions during the months of January through March, 1976 orally advised Plaintiffs' counsel that the claims and tenders of defense were made too late and that one of the principal bases for HIG's refusal to accept Plaintiffs' tenders of defense was the untimeliness of the tenders and the prejudice to HIG due to the late tenders.

But as we earlier noted, the question before this court is whether the intermediate appellate court erred in concluding that notice had been given to HIG according to the terms of the insurance contract between the parties.

HIG has waived and cannot now assert as a defense that SOCAL and/or ASC failed to give HIG timely notice of the wrongful death claims." The circuit court later granted summary judgment to the plaintiffs-appellees on the issue of damages.[2]

HIG appealed on the issues of liability and damages. SOCAL cross-appealed on the issue of apportionment of damages. The appeals were consolidated and assigned to the intermediate court of appeals.

## II.

The policy in question provided, as a condition of coverage, that "[i]f claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

HIG argued before the appellate court that it had not received, within a reasonable time, notice that it was the conduct of its insureds in the maintenance of the truck that was being claimed as the cause of the accident. In response, the intermediate appellate court said:

> We cannot agree. The first of the insureds to be joined was ASC. It promptly forwarded the pleadings served upon it to HIG. Under those pleadings, there was a potential liability for the covered risk (negligence in the maintenance of the truck, including loading and unloading) and HIG was on notice of that fact from that point on. Had it defended that risk and participated in the proceedings, it would have had notice of the fact that the truck was being specifically pointed to just as soon as that fact turned up. The insured is required by the policy to give notice and forward the pleadings to the insurer. ASC and AAA did so. We do not think the result is changed by the fact that an additional insured [SOCAL] was brought into the case by a later pleading and no additional notice was sent to HIG. HIG was already on notice of the potentiality with respect to the risk insured against and the joinder of an additional insured in the proceedings did

---

[2] Subsequently, HIG unsuccessfully moved for summary judgment and reconsideration of plaintiffs-appellees' motions for summary judgment.

not increase or change HIG's potential liability at all. [2 Haw. App. at 460-61, 634 P.2d at 129][3]

We have carefully examined the records in this case and have reached the conclusion that the intermediate appellate court did not err in holding that HIG was sufficiently and seasonably notified.

In our view, HIG received the required notice in March, 1975, when it received the Chung complaints against ASC and AAA.[4] Among the allegations against them was:

[That] [D]efendants Air Service and DOES IV through VI, their agents, servants and employees, in inspecting, *servicing,* maintaining and repairing the subject aircraft, *and in failing to detect and remove blockages and obstruction to the flow of fuel into the engines,* and said defendants Air Service and DOES IV through VI were otherwise negligent and careless[.] [Emphasis added]

The foregoing should have alerted HIG to the possibility that the

---

[3] Actually, the pleadings to which the intermediate appellate court refers as evidencing potential liability were not the third-party complaints against ASC in Civil Nos. 40848 and 40849. Rather, it was the Chung complaint against ASC and AAA in Civil No. 44402 which should have alerted HIG to the potential coverage under its policy.

[4] The fact that SOCAL was not brought in as a third-party defendant in the consolidated cases until some three months later does not affect the conclusion we have reached with respect to notice. For as the intermediate appellate court pointed out: "HIG was already on notice of the potentiality [of liability] with respect to the risk insured against and the joinder of an additional insured in the proceedings did not increase or change HIG's potential liability at all." 2 Haw. App. at 460-61, 634 P.2d at 129. See also Carter v. Aetna Casualty & Surety Co., 473 F.2d 1071 (8th Cir. 1973) (discussing Arkansas law); Allstate Insurance Co. v. Moon, ___ A.D.2d ___, 453 N.Y.S.2d 467 (1982); 8 J. Appleman, Insurance Law & Practice, § 4738 (1981); 2 R. Long, The Law of Liability Insurance § 13.06 (1981).

Moreover, this court has consistently construed insurance contracts in favor of the insured and against the insurer. See State Farm Mutual Auto Insurance Co. v. Bailey, 58 Haw. 284, 568 P.2d 1185 (1977); Masaki v. Columbia Casualty Co., 48 Haw. 136, 395 P.2d 927 (1964). See also St. Paul Fire & Marine Insurance Co. v. Hawaiian Insurance & Guaranty Co., 2 Haw. App. 595, 637 P.2d 1146 (1981). And as the court in Miller v. Marcantel, 221 So.2d 557, 559 (La. Ct. App. 1969) has pointed out:

The function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice nor to evade the fundamental protective purpose of the insurance contract to assure the insured and the general public that liability claims will be paid up to the policy limits for which premiums were collected.

Upon reviewing the record, we find that HIG suffered no prejudice by SOCAL's delay in forwarding the papers to HIG.

refueler truck which was covered by its policy might have been involved. The vehicle was clearly listed in the insurance contract as a gas tank truck used by ASC in its aviation-connected activities which, of course, included the refueling of aircrafts. Contrary to HIG's contentions, the pleadings did not have to specifically mention the refueler truck or establish that the refueler truck was the cause of the accident. An insurer's duty to defend arises whenever there is a potential for indemnification liability of insurer to insured under the terms of the policy. *Gray v. Zurich Insurance Company,* 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168 (1966). HIG being both their insurance agent and insurer, we think it was perfectly reasonable for ASC and AAA to rely upon HIG to exercise its good judgment in their behalf. They had the right to expect that their insurance company would make a determined effort to ascertain not only from the pleadings but also from the insurer's own independent investigation whether the insured were entitled to defense representation under the policy. For as the court in *Spruill Motors, Inc. v. Universal Under. Ins. Co.,* 212 Kan. 681, 686, 512 P.2d 403, 407 (1973), has so aptly pointed out:

> [A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. . . . [T]he duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists the company owes the insured a defense. The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation.

The Chung complaint against its insured was submitted to HIG by letter, dated March 12, 1975. The allegations should have alerted HIG to the possibility of coverage under its policy. Trial of the consolidated cases was originally scheduled for February 16, 1976. It actually apparently commenced early in March, 1976. In these and the foregoing circumstances, we conclude that HIG was adequately and seasonably notified.

Affirmed.

*Berton T. Kato (Kobayashi, Watanabe, Sugita & Kawashima,* of counsel) for defendant-appellant, cross-appellee.

**528**

*Warren J. Senda (Case, Kay & Lynch,* of counsel) for plaintiff-appellee, cross-appellant.

*James F. Ventura (Libkuman, Ventura, Moon & Ayabe,* of counsel) for plaintiffs-appellees.