956 F.2d 1166
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CHARTER RISK RETENTION GROUP INSURANCE COMPANY, Plaintiff-Appellee,
v.
Leilani MILLER, Defendant-Appellant.
 No. 91-15146.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1992.
Decided March 10, 1992.
 
 Before FLETCHER, D.W. NELSON and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Leilani Miller (Miller), as assignee of the rights of Kathleen Kobayashi (Kobayashi), appeals the district court's grant of summary judgment in favor of Charter Risk Retention Group Insurance Company (Charter) on Charter's declaratory relief action. We affirm.
 
 STATEMENT OF THE CASE
 
 3
 On June 16, 1988, Leilani Miller was struck by a car driven by Kathleen Kobayashi. Kobayashi and her mother, Annie Tai See, had borrowed the car from Paul Mercado (Mercado). Mercado had rented the car from Harper Car and Truck Rental (Harper) to use while his car was being repaired. Charter insures Harper.[1]
 
 
 4
 Mercado executed a standard form rental agreement with Harper and received a Toyota Tercel from the agency. He declined insurance and indicated that no additional drivers would be using the car. The paperwork, however, was sent to the insurer of Mercado's car because it had agreed to pay for vehicles rented while repairs covered by its policy with Mercado were being performed. Mercado subsequently exchanged the Toyota for a Lynx, and then exchanged the Lynx for an Isuzu. Separate rental agreements were not executed for either the Lynx or the Isuzu. Kobayashi was driving the Isuzu when she hit Miller.
 
 
 5
 Miller sued Harper, Mercado, and Kobayashi in Hawaii state court. All defendants in the state court action have settled. As part of Kobayashi's settlement agreement with Miller, Kobayashi assigned to Miller all rights that Kobayashi might have had against Charter.
 
 
 6
 Charter brought an action for declaratory relief in federal district court. It sought a declaration that it owed Kobayashi no duty to defend or indemnify against Miller's state court action. The district court granted Charter's motion for summary judgment, and Miller, standing in Kobayashi's shoes, timely filed this appeal.
 
 STANDARD OF REVIEW
 
 7
 We review de novo the district court's grant of summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Our review is governed by the same standard used by the district court under Federal Rule of Civil Procedure 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
 
 DISCUSSION
 
 8
 Under Hawaii law and Charter's policy with Harper, Charter has a duty to defend its insured against covered claims. The policy defined an "insured" as Harper and anyone using the car with its express or implied permission. The district court found that Kobayashi was not an "insured" within the meaning of Charter's policy or the law, and thus Charter owed Kobayashi no duty to defend.
 
 
 9
 Harper's rental agreement with Mercado expressly limits the class of "insured" drivers. It states:
 
 
 10
 In no event shall the car be used, operated or driven ... (6) by any person except Lessee, or a qualified licensed driver with Lessor's prior written consent.
 
 
 11
 Mercado initialed a provision on the face of the contract which indicated that there would be no additional drivers. He then signed the contract in the space provided below the provision warranting that he had read, understood, and agreed to all the terms of the rental agreement. Thus, it is undisputed that Kobayashi did not have express permission from Harper to drive the car.
 
 
 12
 Miller contends that this limitation clause is invalid and from that goes on to say that Kobayashi had implied permission to use the car. First, she argues that it was not "conspicuous, plain and clear," as special limitations and exclusions from insurance coverage must be to be binding. See Interstate Fire & Casualty Co. v. Stuntman Inc., 861 F.2d 203, 206 (9th Cir.1988). Also, the clause was not in ten point type as required for insurance contracts by Hawaii Revised Statutes § 431:10-104(2). Moreover, ambiguities in contracts of adhesion are usually interpreted against the draftsman and in favor of the reasonable expectations of the layperson. Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203, 209, 684 P.2d 960, 964 (1984). Mercado apparently failed to understand that the rental agreement limited his ability to lend the car to others. Miller argues that since the car was rented as a "loaner" while Mercado's car was being repaired it was reasonable for him to assume that he could lend it to friends as freely as his own car. Finally, Miller argues that Mercado's rights cannot be governed by the rental agreement because that contract concerned only the Toyota, not the Isuzu which was involved in the accident.
 
 
 13
 Miller fails to provide any compelling reason why we should decline to enforce the terms of the rental agreement as written. Unlike Sturla and Stuntman, the terms of the contract are not ambiguous: Harper expressly limited its permission to the lessee (Mercado) and a "qualified licensed driver with Lessor's prior written permission," and Mercado expressly agreed that there would be no "additional drivers." Thus, absent some ambiguity in the contract, the reasonable expectations doctrine can be of no avail to Miller. The fact that the clause was printed in smaller than ten point type is of no significance. Section 431:10-104(2) applies to insurance contracts, not rental agreements.
 
 
 14
 Moreover, even if the express terms on the reverse of the rental agreement could be ignored despite Mercado's signing of a statement that he had read them and agreed to them, it was not reasonable for Mercado to believe that he could lend the rental car as freely as his own. He had initialed the "Additional Drivers" provision, and indicated that there would be none. In that regard, we observe that the "Additional Drivers" provision was not just a piece of indistinct fine print. The type was clear and was part of a blank where the names of any other drivers could be inserted. The word "none" was written in that blank and Mercado initialed it right next to that word. Donna Feliciano (Feliciano), the rental agent, testified that it was her practice to inform all renters that additional drivers would need to present a driver's license and sign the agreement before Harper would authorize their use of the car. While one could dispute whether Feliciano actually told Mercado those things, it is clear that she did not tell Mercado that others could use the car. In fact, nothing indicates that the express terms were in any way amended or modified by Mercado and Feliciano. Finally, the fact that a separate rental agreement was not executed for the Isuzu proves little. Certainly Miller does not contend that the parties believed that Mercado was getting the Isuzu scot-free. Harper and Mercado both understood that the terms of the original agreement continued to be binding and that the exchange amounted to nothing more than a modification of one term of the rental agreement: the description of the car rented. All other terms, including the authorization term and the "Additional Drivers" term, continued in full force and effect.
 
 
 15
 Kobayashi can be considered an insured only if Harper gave implied permission to Mercado to allow others to use the rental car despite the terms of the rental agreement. In part, her argument seems to be that Harper should have expected Mercado to ignore the express terms withdrawing permission for use by other drivers and thus Harper impliedly gave other drivers permission to use the car. We have previously rejected this argument. See Travelers Ins. Co. v. Budget Rent-a-Car Sys., 901 F.2d 765, 768 (9th Cir.1990).
 
 
 16
 Kobayashi was not an "insured," so there was no possibility of indemnification liability. Therefore, her claim that Charter had a duty to defend her has no merit. Cf. Standard Oil Co. v. Hawaiian Ins. & Guaranty Co., 65 Haw. 521, 654 P.2d 1345, 1349 (1982).
 
 
 17
 The district court properly found that as a matter of law Kobayashi was not an "insured" and that Charter owed her no duty to defend.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The insurance contract lists Charter and BATS, Inc. as parties. BATS, Inc. is engaged in business under the name of Harper Car and Truck Rental of Hawaii