CHICAGO INSURANCE CO., Plaintiff,

v.

Michael J. GRIFFIN, et al., Defendants.

Civ. No. 92–00130 BMK.

United States District Court,
D. Hawaii.

April 9, 1993.

Dennis E.W. O'Connor, Paul T. Yamamura, Ortiz & Nakamura, Honolulu, HI, for plaintiff Chicago Ins.

Michael J. Griffin, pro se.

Francis T. O'Brien, Ashford & Nakamura, Honolulu, HI, and Sharyn S. Monet, Kailua, HI, for defendant Dallas.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

KURREN, United States Magistrate Judge.

This case came on for hearing on plaintiff Chicago Insurance Company's Motion for Summary Judgment. Dennis E.W. O'Connor, Esq. and Paul T. Yamamura, Esq. appeared on behalf of plaintiff Chicago Insurance Company ("Chicago"). Francis T. O'Brien, Esq. and Sharyn Stephani Monet, Esq. appeared on behalf of defendant Joanne Marie Dallas ("Dallas"), and defendant Michael J. Griffin ("Griffin") appeared *pro se.* After reviewing the motion, the memoranda in support thereof and in opposition thereto, and hearing oral argument, the court GRANTS Chicago's Motion for Summary Judgment.

### I. BACKGROUND

On November 1, 1987, Chicago issued a professional liability insurance policy to Griffin. In its complaint based upon federal

diversity jurisdiction, 28 U.S.C. § 1332(a), Chicago seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) that it has no obligation under the policy to indemnify Griffin for claims asserted against Griffin by Dallas in a Hawaii State Circuit Court suit, and that it is not obligated to provide Griffin a defense to those claims.

Dallas alleges in her amended complaint in the underlying action that from June, 1987 through March, 1989, she saw Griffin, a psychologist in private practice, for treatment of anxiety and depression. It is further alleged that in January, 1989, the two entered into a sexual relationship which lasted until March, 1989. Dallas also alleges that on or about May 2, 1990, approximately one year after she terminated therapy with Griffin, Griffin contacted Dallas by telephone and attempted to coerce her into not disclosing that Griffin fraudulently charged CHAMPUS insurance for counseling services rendered to Dallas by Griffin. Dallas also maintains that on May 2, 1990, Griffin obtained a statement from Dallas' ex-husband apparently stating Dallas was not Griffin's patient.

In July, 1990, Dallas filed an action in state court against Griffin. She alleges claims based on malpractice and infliction of emotional distress. Griffin tendered the defense to Chicago, his malpractice carrier, which accepted under a reservation of rights and thereafter defended. This declaratory judgment action followed.

As discussed more fully below, Dallas' claims in the underlying action concerning Griffin's actions prior to May, 1990 are claims arising out of sexual conduct, and therefore, coverage is excluded by the clause in the policy excluding coverage for claims arising out of sexual activity. Furthermore, there is no coverage under the policy for Dallas' claims concerning Griffin's May 2, 1990 contact of Dallas and her ex-husband because Griffin was not at that time rendering "professional services" as defined by the policy. Since all of Dallas' claims against Griffin in the underlying action are either excluded from coverage or not covered under the policy, Chicago does not have a duty to indemnify or defend Griffin for those claims.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The movant bears the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. *But cf, Id.,* at 328, 106 S.Ct. at 2555 (White, J. concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support her legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 280 (9th Cir.1979). The opposing party cannot stand on her pleadings, nor can she simply assert that she will be able to discredit the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch.*

*Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)) (original emphasis).

■ The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Eisenberg,* 815 F.2d at 1289.

■ However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the non-moving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* These inferences may be drawn both from the underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*

### III. DISCUSSION

#### A. Choice of Law

■ A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state. *Davis v. Metro Prod., Inc.,* 885 F.2d 515, 524 (9th Cir.1989). Thus, this court looks to the law of Hawaii to determine the issues raised by the present motion. In the absence of controlling state law, the court "must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980).

#### B. Scope of the Policy Coverage

■ Resolution of the issues raised by Chicago's summary judgment motion turns on the interpretation and application of the policy issued by Chicago. Interpretation of an insurance policy begins with an examination of the policy language. *Sturla, Inc. v. Fireman's Fund Ins. Co.,* 67 Haw. 203, 207, 684 P.2d 960, 962 (1984). The court must interpret the terms of the insurance policy according to the plain meaning of its words and may not assign a different meaning unless clearly intended by the parties. *Maui Land & Pineapple Co., Inc. v. Dillingham Corp.,* 67 Haw. 4, 10, 674 P.2d 390 (1984). The court must "enforce the objectively reasonable expectations of parties claiming coverage under insurance contracts, which are construed in accord with the reasonable expectations of a lay person." *Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co.,* 72 Haw. 80, 88, 807 P.2d 1256 (1991) (internal quotation and citation omitted).

#### 1. *Sexual Activity Exclusion*

■ Chicago contends that the exclusion relating to sexual activity excludes from coverage Dallas' claims concerning Griffin's actions prior to May, 1990. The sexual activity exclusion clause in the policy issued by Chicago to Griffin reads in pertinent part as follows:

> This insurance does not apply to injury arising out of sexual activity, molestation, assault or abuse by any insured or any employee of any insured or any volunteer or other person performing services for any insured, whether such sexual activity, molestation, assault or abuse is committed intentionally, negligently, inadvertently, or with the belief by such insured, employee, volunteer or other person, erroneous or otherwise, that the victim is consenting to sexual activity and has legal and mental capacity to consent thereto; ... however, notwithstanding the foregoing, the insured shall be protected under the terms of this policy as to any claim upon which suit may be brought against him for any such alleged behavior by the insured unless a judgment or final adjudication adverse to the insured shall establish that such behavior occurred as an essential element of the cause of action so adjudicated ...

Dallas argues that her claims concerning Griffin's actions prior to 1990 are based on Griffin's mishandling of the transference pro-

cess which is a basic part of the psychoanalytical technique. She maintains that Griffin's malpractice or the management of the transference process is separate from his sexual conduct, and therefore, her claims are beyond the scope of the sexual activity exclusions.

In *Govar v. Chicago Insurance Co.*, 879 F.2d 1581 (8th Cir.1989), the Eighth Circuit construed a similar policy exclusion contained in a Chicago Insurance policy under similar facts. In *Govar*, Atherton Hiett, a psychologist, treated Shannon Govar for several months, and during the course of the treatment, he engaged in a sexual relationship with Govar. Govar brought a medical malpractice action against Hiett, and judgment was entered in favor of Govar. A declaratory judgment action followed. The trial court in the declaratory judgment action entered summary judgment in favor of Chicago based on the sexual activity exclusion. The Eighth Circuit affirmed, holding that the exclusion applied because all of Govar's claims arose out of the sexual acts between herself and Hiett. *Id.* at 1582.

Govar argued, as Dallas argues here, that the insured's sexual conduct was only one factor in the insured's malpractice. The *Govar* court rejected this argument, emphasizing that the record demonstrated that the sexual relationship between Govar and Hiett was so intertwined with Hiett's malpractice as to be inseparable, and therefore, the clause of the malpractice policy excluding coverage for claims arising out of sexual acts performed by the psychologist excluded coverage. *Id.* at 1583.

Similarly, in *Cranford Insurance Co. Inc. v. Allwest Ins. Co.*, 645 F.Supp. 1440 (N.D.Cal.1986), the court determined in granting summary judgment that a malpractice claim based on the allegation that a psychiatrist mishandled the transference process by becoming sexually involved with a patient was excluded from coverage under a provision of a professional liability policy excluding claims "involving sexual intimacy". In applying the exclusion, the court observed that although the claim was based on malpractice, the sexual activity itself constituted the mishandling of the transference process. *Id.* at 1444.

The cases argued by Dallas are inapposite. She relies upon *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo.1968); *St. Paul Fire & Marine Ins. Co. v. Mitchell*, 164 Ga.App. 215, 296 S.E.2d 126 (1982), *Vigilant Ins. Co. v. Employers Ins. of Wausau*, 626 F.Supp. 262 (S.D.N.Y.1986), and *St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698 (Minn.1990), citing them for the proposition that when a therapist mishandles the transference process and becomes sexually involved with a patient such conduct is malpractice and therefore covered under a professional liability policy. None of those cases, however, consider the application of a specific policy exclusion for claims arising out of sexual activity such as we have in the present case.

Just as in *Govar* and in *Cranford*, Dallas' malpractice claims against Griffin are excluded from coverage under the clause of the Chicago policy excluding claims arising out of sexual activity because the sexual relationship between Griffin and Dallas is the essential element of the claims. Although Dallas asserts that it is possible she may be able to prove her case of negligent failure to manage transference without reference to sexual activity, she has not come forward with any significant probative evidence indicating that conduct other than the sexual conduct referred to in her amended complaint is involved in her claim. As noted above, Dallas cannot defeat summary judgment without such evidence. *See Commodity Futures Trading Comm'n*, 611 F.2d at 280; *T.W. Elec.*, 809 F.2d at 630.

Since it is clear from a review of Dallas' amended complaint in the underlying action and the materials submitted in connection with the summary judgment motion that Dallas' claims concerning Griffin's actions prior to his conduct in May, 1990 arise from sexual activity, the court need not, as Dallas urges, wait until judgment is entered in the underlying action before resolving the coverage dispute. This court finds, as the *Govar* court found, that the undisputed facts demonstrate that Griffin's malpractice and the sexual relationship between Griffin and Dallas are so intertwined as to be inseparable. Therefore,

Dallas' claims, though based on malpractice, are excluded from coverage.

### 2. *May 2, 1990 Acts of Griffin*

█ The remaining claims asserted by Dallas in the underlying action concern a telephone call from Griffin to Dallas and Griffin's contact of Dallas' ex-husband. Chicago asserts that there is no coverage with regard to Griffin's actions on May 2, 1990, because his actions on that date, approximately one year after Dallas terminated her professional relationship with Griffin, did not constitute professional services, as defined by the policy.

In the liability section of the policy, Chicago agrees "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to which this insurance applies, caused by an incident which occurred during the policy ..." The term "incident" is defined in the policy as "any act or omission in the furnishing of services by the insured in the professional occupation as shown in the declarations." Griffin's professional occupation, as shown in the declarations, is "self-employed counselor". Thus, in order for an "incident" to have occurred, Griffin must have been furnishing his professional services as a "counselor".

The definition of "professional services" most commonly employed stems from *Marx v. Hartford Accident and Indemnity Co.*, 183 Neb. 12, 13–14, 157 N.W.2d 870, 871–72 (1968), where the Nebraska Supreme Court defined the term as follows:

A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual ... in determining whether a particular act is of a professional nature or a "professional service" we look not to the title or character of the party performing the act, but to the act itself.

In *Bank of California, N.A. v. Opie*, 663 F.2d 977 (9th Cir.1981), the Ninth Circuit followed the reasoning of *Marx*. There, the court stated that to be considered a professional service, an act must arise out of "the insured's performance of his specialized vocation or profession." *Id.* at 981.

Viewing the evidence in a light most favorable to Dallas and Griffin, the court concludes that Griffin's acts on May 2, 1990, cannot be considered as the furnishing of services in his professional occupation. It is admitted in the amended complaint in the underlying action that Dallas terminated her professional relationship with Griffin in March, 1989. It is also alleged in the underlying action that Griffin called Dallas on May 2, 1990, in an effort to coerce Dallas into not disclosing to the authorities certain fraudulent billing practices on the part of Griffin. Griffin clearly was not engaged in the ordinary course of the practice of his profession or specialized vocation as a counselor when he called Dallas on May 2, 1990. When Griffin contacted Dallas, he was not rendering professional services. Rather, it appears he was attempting to cover up alleged fraudulent acts. Similarly, Griffin's contact with Dallas' ex-husband on May 2, 1990, for the purpose of indicating to him that Dallas had not been Griffin's patient cannot be construed as the rendering of professional services to Dallas.

Dallas argues that the May 2, 1990 claims are covered because they arise from Griffin's breach of his continuing duty, as Dallas' therapist, not to use information gained through the therapist-patient relationship in a way which would cause Dallas harm. As noted above, in order to defeat summary judgment, Dallas "may not rest upon the mere allegations or denials of [her] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Dallas has not, however, produced any significant probative evidence tending to support her theory as stated above. Since it appears clear that the May 2, 1990 contacts fall outside the realm of Griffin's "professional services", Dallas' claims concerning such contacts are not covered under the policy.

### C. Duty to Defend

Dallas argues that even if there is no coverage for the claims asserted against Grif-

fin in the underlying action, Chicago is obligated to continue with its defense of Griffin in the underlying action.

 The scope of the duty to defend is broader than the scope of coverage. *Ticor Title Ins. Co. of California v. American Resources, Ltd.*, 859 F.2d 772 (9th Cir.1988) (applying Hawaii law). As noted by the Hawaii Supreme Court in *Standard Oil Co. of California v. Hawaiian Ins. & Guar. Co., Ltd.*, 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982), "an insurer's duty to defend arises whenever there is a potential for indemnification liability of an insurer to insured under the terms of the policy." However, an insurer need not defend against claims that do not come within the policy coverage. *Ticor Title Ins. Co.* at 774–75.

 The record in this case reflects that Chicago agreed to defend Griffin in the underlying action under a reservation of rights because of the potential for coverage. An insurer who defends an insured does not waive its right to assert policy defenses when it first notifies the insured that it is disclaiming liability under the policy. *Crawford v. Ranger Insurance Co.*, 653 F.2d 1248, 1253 (9th Cir.1981). Based on this court's finding that Dallas' claims in the underlying action against Griffin are either excluded from coverage or not covered under the policy, no possibility of coverage exists and there is no duty to defend arising from the policy.

## IV.  CONCLUSION

For the foregoing reasons, and for good cause shown, the court finds that Dallas' claims concerning Griffin's actions prior to May, 1990 arise out of the sexual relationship between Griffin and Dallas and are therefore excluded from coverage under the policy's sexual activity exclusion. The court also finds that Griffin's actions on May 2, 1990, occurred after the termination of his professional relationship with Dallas and did not occur at a time when Griffin was providing professional services as defined by the policy. The court therefore orders summary judg-

ment in favor of Chicago and against Dallas and Griffin.

IT IS SO ORDERED.