**COLUMBIA HEIGHTS MOTORS, INC., Respondent,**

v.

**ALLSTATE INSURANCE COMPANY, Appellant.**

No. 48431.

Supreme Court of Minnesota.

Jan. 12, 1979.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan & Gary M. Hagstrom and J. Richard Bland, Minneapolis, for appellant.

Rischmiller, Wasche & Knippel, Minneapolis, for respondent.

Heard before PETERSON, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an appeal by defendant Allstate Insurance Company from an order of the Hennepin County District Court granting summary judgment to plaintiff Columbia Heights Motors, Inc., and from judgment entered October 27, 1977. We affirm.

Plaintiff is a corporation engaged in the sales and service of automobiles. In 1973, plaintiff contracted with defendant for business insurance, and defendant issued its Business Package Policy No. 11 599 944BP to plaintiff, effective June 1, 1973. The policy provided several types of coverage, including general liability, garage liability, automobile liability, automobile physical damage, loss of business income, and loss or damage to property. Premiums were computed on an annual basis; the policy period ran from June 1, 1973 to June 1, 1976.

During the policy period plaintiff sustained a loss through the dishonest activities of one of its employees. The yearly breakdown of that loss was as follows:

June 1, 1973 to May 30, 1974 $ 1,543.21
June 1, 1974 to May 30, 1975 $31,386.50
June 1, 1975 to May 30, 1976 $29,819.76

Defendant acknowledges that the type of loss incurred is covered by the policy, but argues that because the loss was caused by the activities of only one employee, maximum liability undcr the policy is $25,000 for the entire policy period. Plaintiff contends that the policy covers the loss up to $25,000 per year for each of the three years.

After a hearing on cross motions for summary judgment on the issue of the limits of defendant's liability, the district court granted plaintiff's motion for summary judgment on the basis that the policy was ambiguous with respect to the amount of coverage.[1] Judgment was entered pursuant to the order, and defendant appealed.

The legal issue posed in this appeal is whether the trial court erred in finding that the language of the insurance policy was ambiguous and in resolving that ambiguity in favor of the insured.

 Whether the language of an insurance policy is ambiguous is a question of law to be decided initially by the trial court. This court, on appeal, must determine whether the trial court was correct in finding ambiguity. *ICC Leasing Corp. v. Midwestern Machinery Co.*, 257 N.W.2d 551, 554 (Minn.1977). If the language of the policy is reasonably subject to more than one interpretation, there is ambiguity. Id. If it is not reasonably subject to more than one interpretation, there is no ambiguity. A court may not "read an ambiguity into the plain language of a policy in order to provide coverage." *Farkas v. Hartford Accident and Indemnity Co.*, 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969). In interpreting the policy language, a court is to give the terms "their plain, ordinary, and popular meaning." *Ostendorf v. Arrow Insurance Co.*, 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970).

In this case, four policy provisions are relevant to determining appellant's liability:

(1) Condition 10 of the General Provisions, which states:

"10. Application of Aggregate Limits of Liability

"Any limit of Allstate's liability stated in this policy as 'aggregate' shall apply separately to each consecutive annual period."

(2) Insuring Agreement IA of the Comprehensive Crime Form, which provides that "Allstate agrees to pay for:"

"Loss of Money. Securities and other property which the Insured shall sustain, to an amount not exceeding in the aggregate the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement IA through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others."

(3) the Table of Limits of the Comprehensive Crime Form, which indicates that the limit of liability under Insuring Agreement IA is $25,000; and

(4) Section 11 (Limits of Liability) of the Comprehensive Crime Form, which provides that—

"Payment of loss under Insuring Agreement IA, IB or V shall not reduce Allstate's liability for other losses under the applicable Insuring Agreement whenever sustained. Allstate's total liability (a) under Insuring Agreement IA for all loss caused by any Employee or in which such Employee is concerned or implicated, (b) under Insuring Agreement IB as to each Employee or (c) under Insuring Agreement V for all loss by forgery or alteration committed by any person or in which such person is concerned or implicated, whether such forgery or alteration involves one or more instruments, is limited to the applicable amount of insurance specified in the Table of Limits of Liability or endorsement amendatory thereto. The liability of Allstate for loss sustained by any or all of the Insured shall not exceed the amount for which Allstate would be liable had all such loss been sustained by any one of the Insured.

"Except under Insuring Agreements IA, IB and V the applicable limit of liability stated in the Table of Limits of Liability in the Schedule is the total limit of Allstate's liability with respect to all loss of property of one or more persons or organizations arising out of any one occurrence. All loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series of related acts at

---

1. The actual amount of plaintiff's loss and defendant's liability is yet to be litigated.

the Premises, whether committed by one or more persons, shall be deemed to arise out of one occurrence.

"Regardless of the number of years this form shall continue in force and the number of premiums which shall be payable or paid, the limit of Allstate's liability as specified in the Table of Limits of Liability in the Schedule shall not be cumulative from year to year or period to period."

There seems to be no dispute as to the meaning of Condition 10; the meaning of Insuring Agreement IA is not in dispute insofar as both parties apparently agree that defendant may, in some circumstances, be liable for up to $25,000 per year; and there is no dispute that the Table of Limits of Liability limits liability to $25,000.

Section 11 is the provision in dispute. Defendant contends that this provision limits total liability for the entire policy period for all loss caused by a single employee. Plaintiff argues that this provision states a $25,000 limit per "consecutive annual period."

The trial court's memorandum of law, accompanying its findings, is brief and to the point, so we will set it out in full herein:

"A reading of the disputed insurance policy reveals that ambiguities exist. The ambiguities which give rise to the present motion can be summarized as follows:

"A. 1. Form U8003B [hereinafter referred to as the general provisions] page GPP 1 provides:

'The following conditions apply to Sections I–VI except as specifically indicated therein. Additional Conditions or Modifications of the following Conditions may appear in the policy Sections.'

2. Form U8112B [hereinafter referred to as the Comprehensive Crime Form] page PCC 2 provides:

'This form is subject to the provisions and stipulations herein and endorsed hereon, the schedule(s) of this form, the Declarations and the applicable General Provisions of this Policy.'

"B. 1. Insuring Agreement 1A of the Comprehensive Crime Form provides that:

'[Allstate agrees to pay] loss . . . which the insured shall sustain, to an amount not *exceeding in the aggregate* the amount stated in the Table of Limits of Liability [$25,000.00] . . .'

2. Condition/Limitation—Section 11 of the Comprehensive Crime Form which provides:

'Allstate's total liability (a) under Insuring Agreement 1A for loss caused by an Employee, or in which such Employee is concerned or implicated . . . is limited to the applicable amount of insurance specified in the Table of Limits of Liability . . .'

And further,

'Regardless of the number of years this form shall continue in force and the number of premiums which shall be payable or paid, the limits of Allstate's liability as specified in the Table of Limits of Liability in the Schedule shall not be cumulative from year to year or period to period.'

"The ambiguity which has precipitated this dispute comes from the interrelation of A & B above. This arises as follows:

"1. Condition 10 (GPP4) states that:
'Any limit of Allstate's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period.'

"Plaintiff contends that this condition is made applicable by the language cited from Form U8003B, page GPP1. Plaintiff thus contends that when Insuring Agreement 1A (cited above) uses this term, the construction supplied by Condition 10 should apply.

"2. Defendant contends that the definition of 'Aggregate' supplied by Condition 10 does not apply by reason of:

a. The language from form U8112B page PCC 2 (cited above); and,

b. The limiting language of Section 11 of the Comprehensive Crime Form (cited above).

"At this state then, it seems undeniable that a real ambiguity does exist. The initial insuring agreement appears to provide $25,000 of employee dishonesty commercial blanket coverage per year; a limiting condition appearing some 7 pages later purports to cut that coverage from $25,000 per year, to a total of $25,000 regardless of the number of years.

"In the construction of insurance contracts, the courts are guided by a multitude of rules, maxims and cannons [sic]. When ambiguities are present in a policy, specific rules of law control. The Minnesota Court has recently and unequivocally affirmed its position that:

'Ambiguities are to be resolved against the insurer and in accordance with the reasonable expectations of the insured. *Caledonia Community Hospital v. St. Paul Fire and Marine Insurance Company,* 307 Minn. 352, 239 N.W.2nd 768, 770 (1976), citing *Northwest Airlines, Inc. v. Globe Ind. Co.,* 303 Minn. 16, 26, 225 N.W.2nd 831, 837 (1975); *Casperson v. Webber,* 298 Minn. 93, 98, 213 N.W.2nd 327, 330 (1973).'

This is a well known and accepted principle of law as shown by the authorities collected in 1 Couch, Cyclopedia of Insurance Law 2nd § 15:73. Additionally, as succinctly summarized by Mr. Justice Scott in *Hennen v. St. Paul Mercury Ins. Co.,* 312 Minn. ——, 250 N.W.2nd 840, 844 (1977) the Courts must heed:

'. . . Minnesota's strong policy of extending coverage rather than allowing coverage to be restricted by confusing or ambiguous language . . .'

Applying these rules to the instant factual situation, it becomes apparent that Plaintiff's position must be sustained.

"As a conclusion, it should be added that the Court is aware that it must fastidiously guard against the invitation to 'create ambiguities' where none exist (*Farkas v. Hartford Acc. & Indem. Co.,* 285 Minn. 324, 173 N.W.2nd 21 (1969). However, a careful and thorough reading of the instant policy reveals a real ambiguity on a crucial matter. In light of the foregoing, that ambiguity must be resolved in favor of the insured."

We agree with the trial court that certainly the policy is subject to more than one interpretation. Were we to accept one interpretation, plaintiff's interpretation would appear to be the more reasonable. Both the general conditions and the insuring agreement use the word "aggregate" to refer to an annual limitation on defendant's liability; the insuring agreement and the table of limits of liability, read together, limit defendant's liability for any particular year to $25,000. In addition, the last paragraph of section 11 of the comprehensive crime form would appear to prevent cumulation of any portion of the $25,000 annual limit unpaid in previous years.

However, we need not decide which interpretation is the more accurate. The reference in section 11 to a limitation on "total" liability and the reference in the insuring agreement to a limitation on annual liability raise a reasonable doubt regarding the limitations of liability. The general rule in Minnesota is that any reasonable doubt as to the meaning of the language of an insurance policy must be resolved in favor of the insured. *Farkas v. Hartford Accident and Indemnity Co., supra,* 285 Minn. at 327, 173 N.W.2d at 24. Since such a reasonable doubt exists, the trial court correctly found for plaintiff.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.