433 So.2d 1295 (1983)
KENT INSURANCE COMPANY, an Insurance Company, Appellant,
v.
CAPITOL MAINTENANCE, INC., a Florida Corporation, Appellee.
No. AP-95.
District Court of Appeal of Florida, First District.
June 30, 1983.
*1296 W. Douglas Childs and Patrick A. Carr of Bullock, Sharp, Childs, Mickler & Cohen, Jacksonville, for appellant.
Joseph R. Moss, Cocoa, for appellee.
NIMMONS, Judge.
Kent Insurance Company (Kent) filed a declaratory judgment action against its insured, Capitol Maintenance, Inc. (Capitol), seeking a declaratory judgment in order to settle a policy coverage question. Kent appeals from the declaratory judgment which was subsequently entered adverse to its position. We reverse in part.
On June 2, 1980, Capitol purchased from Kent a policy of property damage liability insurance. Capitol was engaged in painting the Acosta Bridge in Jacksonville pursuant to a contract therefor with the State of Florida Department of Transportation. During the period the policy was in force, various claims were made against Capitol for damage to motor vehicles in the vicinity of the Acosta Bridge allegedly resulting from Capitol's paint spraying operation.
One of the claims against Capitol and Kent was made by State Farm Mutual Insurance Company ("State Farm"), as subrogee, to recover a total of $10,600 which it had paid to one hundred of its insureds whose vehicles had allegedly been damaged by the paint spraying operation. Similarly, Liberty Mutual Insurance Company ("Liberty") asserted a claim as subrogee to recover sums totalling in excess of $9,100 representing amounts it had paid to twenty-seven of its insureds for paint damage caused by Capitol. Florida Publishing Company ("FPC") also sought to recover for paint damages to thirty-three of its vehicles and sixteen of its employees whose vehicles also allegedly sustained paint damage. None of the losses sustained by any of State Farm's or Liberty's insureds exceeded $1,000. Likewise, none of the losses sustained by any of FPC's employees exceeded $1,000. The dispute was over the proper interpretation of the $1,000 deductible clause in the Kent insurance policy purchased by Capitol.
The judgment appealed determined that the policy provisions were unclear as to the meaning of "claims" as used in the deductible provision. The court interpreted the policy such that the combined claims of State Farm's insureds, Liberty's insureds and FPC and its employees each constituted a single "claim" for purposes of the application of the $1,000 deductible. We disagree.
The subject liability policy offered either a "per claim" deductible or "per occurrence" deductible and clearly defined each. Capitol, presumably for reasons of premium economy, opted for the per claim deductible. The per occurrence deductible is defined in the policy as follows:
Per Occurrence Basis  If the deductible is on a "per occurrence" basis, the deductible amount applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of all bodily injury or property damage as the result of any one occurrence. [Emphasis supplied]
In contrast, the policy defines per claim deductible as follows:
Per Claim Basis  If the deductible is on a "per claim" basis, the deductible amount *1297 applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of bodily injury sustained by one person, or to all property damage sustained by one person or organization, as the result of any one occurrence. [Emphasis supplied]
Kent does not disagree with the trial court's finding that the "occurrence" in the instant case was "continuous or repeated exposure to the overspray painting landing on motor vehicles while the bridge was being painted."[1] However, Kent asserts, and we agree, that the court erred when it found that such occurrence gave rise to the three "claims by three organizations": (1) State Farm's single "claim" as subrogee of its various insureds whose vehicles were damaged; (2) Liberty Mutual's single "claim" as subrogee of its various insureds whose vehicles were damaged; and (3) FPC's claim on behalf of itself and its various employees whose vehicles were damaged. The trial court predicated its holding upon the finding that the term "claim" as used in the policy's per claim deductible provision was ambiguous and that the policy should, therefore, be interpreted to provide for greater indemnity.
Although ambiguities in insurance contracts are to be liberally construed in favor of the insured, e.g. Hodges v. National Union Indemnity Company, 249 So.2d 679 (Fla. 1971), absent ambiguity, courts are bound to give the language of an insurance contract its plain and normally accepted meaning. E.g. Equitable Life Assurance Society of U.S. v. Pinon, 344 So.2d 880 (Fla. 3rd DCA 1977); Morrison Assurance Company, Inc. v. City of Opa-Locka, 389 So.2d 1079 (Fla. 3rd DCA 1980). The court may not rewrite an insurance contract extending coverage beyond that plainly provided for in the contract. United States Fire Insurance Co. v. Morejon, 338 So.2d 223 (Fla. 3rd DCA 1976). We do not believe that the per claim deductible provision is ambiguous.
A subrogee stands in the shoes of the subrogor and has only those rights which the subrogor had. Boley v. Daniel, 72 Fla. 121, 72 So. 644 (Fla. 1916); Underwriters at Lloyds v. City of Lauderdale, 382 So.2d 702 (Fla. 1980); Ulery v. Asphalt Paving, Inc., 119 So.2d 432 (Fla. 1st DCA 1960). State Farm and Liberty have no rights independent of or greater than their insureds possessed individually. Each insured whose vehicle was damaged had an individual claim against Capitol. Acceptance of the trial court's interpretation of the policy would lend itself to illogical and anomalous results. The logic of permitting a subrogee to accumulate into one "superclaim" the individual claims of its insureds in order to defeat the per claim deductible provision of the tortfeasor's liability policy would also support practices such as a person's taking enough assignments of individual claims so as to defeat the purpose and intent of the per claim deductible provision.
There appears to be no Florida case directly on point. However, it has been held by a New Jersey court that "several claims by third parties cannot be converted into a single claim by the mere expedient of paying them." Burlington County Abstract v. QMQ Assoc., 400 A.2d 1211 (Sup.Ct., N.J. 1979). The authorities cited by appellee Capitol from other jurisdictions are distinguishable and do not support its position.
Likewise, the policy does not lend itself to an interpretation which would support the accumulation of the FPC employees' individual claims and the merger of the same into FPC's claim to defeat the intent of the policy's deductible provision. However, insofar as the judgment recognizes as one claim FPC's claim for damages to its 33 vehicles (not to be confused with the separate and distinct claims of the FPC employees), the trial court was obviously correct in this respect and Kent does not contend otherwise.
The declaratory judgment appealed is reversed in part and affirmed in part and *1298 remanded for the entry of judgment consistent with this opinion.
Reversed and remanded.
LARRY G. SMITH and JOANOS, JJ., concur.
NOTES
[1] The policy defined "occurrence" as "property damage arising out of continuous or repeated exposure to substantially the same general conditions... ."