**Glenn K. OKADA, William E. Takabayashi, and Richard A. Cooke, Jr., Plaintiffs,**

v.

**MGIC INDEMNITY CORPORATION, also known as Ambac Indemnity Corporation, Defendant.**

**Civ. No. 84–1318.**

United States District Court, D. Hawaii.

April 30, 1985.

2. The court notes that the EEOC reached the same conclusion, although such a determination is not controlling here.

John S. Edmunds, Ronald J. Verga, Alan van Etten, B. Regina Green, Honolulu, Hawaii, for plaintiffs.

Goodsill, Anderson, Quinn & Stifel, John Rapp, Honolulu, Hawaii, for defendant.

Damon, Key, Char & Bocken, Steven H. Levinson, Diane D. Hastert, Honolulu, Hawaii, for amicus curiae, Federal Sav. & Loan Ins. Corp.

### DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

PENCE, District Judge.

Plaintiff insureds Okada, Takabayashi, and Cooke are defendants in two pending underlying cases: *FLSIC v. Alexander*, 590 F.Supp. 834 (Hawaii 1984), and *First Hawaiian Bank v. Alexander*, 558 F.Supp. 1128 (D.C.Hawaii 1983). As directors and officers of First Savings & Loan, plaintiffs, along with other directors and officers, are alleged to have negligently caused First Savings to become insolvent.

MGIC is an insurance company which issued a Directors' and Officers' (D & O) liability insurance policy to plaintiffs and some of the other officers and directors of First Savings. Plaintiffs seek a declaratory judgment construing the terms of the policy. They move for summary judgment on the issues set forth below.

### I

The first issue is whether MGIC must pay the attorneys' fees which the directors and officers incur in defending the underlying *FSLIC* and *FHB* cases, *when those fees are billed.*

Section 1(d) of the policy (Plaintiffs' Exhibit 1) defines a "loss" as follows:

> The term "Loss" shall mean any amount which the Directors and Officers are legally obligated to pay or for which the Association is required to indemnify the Directors or Officers, or for which the Association has, to the extent permitted by law, indemnified the Directors and Officers, for a claim or claims made against the Directors and Officers for Wrongful Acts and shall include but not be limited to damages, judgments, settlements, costs (exclusive of salaries of officers or employees), and defense of legal actions, claims or proceedings and appeals therefrom, and cost of attachment or similar bonds; provided however, such Loss shall not include fines or penalties imposed by law or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Thus, a "loss" includes "defense of legal actions, claims or proceedings." The policy does not say when such claims are to be paid, but section 1(d) also defines a "loss" as "any amount which the Directors and Officers are legally obligated to pay...." MGIC argues, however, that legal fees are not to be paid when billed, which is when the legal obligation to pay arises, but only after final judgment or settlement.

MGIC advances five reasons in support of this argument. These will be discussed seriatim.

■ First, MGIC points out that nowhere does the policy state that the insurer must defend lawsuits against the insureds. However, the absence of policy language explicitly imposing a duty to defend does not mean that the policy does not require the insurer to pay defense costs. Like liability arising from a judgment or settlement, attorneys' fees are compensable "losses" under section 1(d) of the policy, quoted above. The only difference is that such fees come due earlier than any possible adverse judgment.

▇ The general rule is that a duty to defend arises when a third-party claim presents a potential for recovery under the policy. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 54 (1966).

The rule was adopted in this jurisdiction in *Standard Oil of California v. Hawaiian Ins. & Guaranty Co.*, 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982) (dictum).

MGIC argues, however, that section 5(c) of the policy relieves it of a duty to pay defense costs. This section states:

> The Insurer may at its option and upon request, advance on behalf of the Directors and Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision.

This section provides for a refund of expenses to the insurer in the event the insurer is ultimately found not liable. Although its application is not wholly clear, this section may have been meant to cover payment and recovery of defense costs in cases where the initial claim rested on dubious grounds and the facts ultimately established indicated that coverage did not exist, as where the insureds' acts were held to be intentional rather than negligent.

▇ This court holds that the above-quoted language does not apply in this case. Section 1(d) indicates that legal fees are "losses" incurred in connection with (alleged) negligent acts and, when they become due, the insurer must pay. As applied to these facts, this is inconsistent with section 5(c), creating an ambiguity in the policy which, under settled case law, especially in Hawaii, is construed against the drafter-insurer, even where the insured is a commercial entity, not an individual. *E.g., Hurtig v. Terminix Wood Treating & Contracting Co.*, Haw., 692 P.2d 1153, 1154

(1984); *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 210, 694 P.2d 960 (1984).

An additional ambiguity is found by comparing section 5(a) with 5(c). Section 5(a) ("No costs, charges and expenses shall be incurred or settlements made without the Insurer's consent....") mentions "costs" and "charges" as well as the "expenses" mentioned in 5(c). If the insurer had meant to include attorney's fees, i.e., "defense of legal actions", in section 5(c), it could have done so explicitly as was done in section 1(d). As stated above, ambiguities should be construed against the insurer.

▇ Third, MGIC agreed under reservation of rights to advance attorney's fees, subject to 60-day notice of discontinuance, the exercise of which gave rise to this suit. This agreement, MGIC urges, constituted a waiver of any right the insureds had to require it to advance their attorneys' fees.

However, the so-called waiver merely was the insureds' consent to MGIC's advancement of fees under reservation of rights and cannot be construed as a waiver of any substantive right. MGIC is now duly exercising its reservation of right to contest liability and the insureds are litigating the matter.

▇ Fourth, MGIC asserts that the no-action clause, section 7(c), bars any attempt to make MGIC advance attorney's fees. This section reads:

> Action Against Insurer Clause—No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy nor until the amount of the Directors' or Officers' obligation to pay shall have been finally determined either by judgment against the Directors and Officers after actual trial, or by written agreement of the Directors or Officers, the claimant and the Insurer.
>
> No person or organization shall have any right under this policy to join the insurer as a party to any action against the Directors or Officers to determine

the Directors' or Officers' liability, nor shall the Insurer be impleaded by the Directors or Officers or their legal representative. . . .

The no-action clause merely bars actions against the insurer by third parties before final judgment or settlement. It does not apply to these facts. *Paul Holt Drilling v. Liberty Mutual Ins. Co.*, 664 F.2d 252 (10th Cir.1981); *Kielb v. Couch*, 149 N.J. Super. 522, 374 A.2d 79 (1977) (insurer may not raise a no-action clause to bar a declaratory judgment action to adjudicate coverage and defense issues).

 Fifth, MGIC has cited cases and academic opinion in support of its position that D & O policies such as the instant one, which do not contain the typical language requiring the insurer to defend suits against the insured, do not impose a duty to advance fees. However, all but one of the cited cases can be distinguished.[1]

The one case in point construed the same policy on the same issue. The court held for MGIC and dismissed the suit for failure to state a claim. *Clandening v. MGIC*, C.D.Cal., Civil No. 83–2432–LTL, (May 23, 1983, Lydick, J.).[2]

The *Clandening* court, however, had no occasion to consider the arguments and cases presented by plaintiffs herein. The *Clandening* plaintiffs raised only token opposition (one page) to MGIC's motion to dismiss, and the court relied on section 5(c) of the policy, quoted above, without mentioning (in transcript of oral ruling, MGIC's Exhibit N) the arguably conflicting section 1(d).

From the record it appears that the reasoning of the *Clandening* court was cursory and incomplete. MGIC has a duty to fund the insureds' defense. As noted, section 5(c) of the policy conflicts with section 1(d) defining "loss", creating a fatal ambiguity which is construed against the drafter-insurer, even though the insureds were presumably sophisticated corporate directors and officers.

 A directors' and officers' policy which did not provide, in the event of suit, for payment of the insureds' attorneys' fees until final judgment—when such suits can last for years and cost astronomical sums to defend—would be virtually impossible to sell to reasonable officers and directors, for it would not truly protect the insureds from financial harm caused by suits against them. An insurance policy should be construed according to the reasonable expectations of the insured. *Sturla, supra*.

## II

The next issue is whether MGIC must pay for multiple losses, or whether there was only one loss caused by many negligent acts.

The policy provides $1 million of coverage per director or officer for losses they caused, subject to a ceiling of $1 million per loss. Only if there were multiple losses would MGIC be liable for multiple millions in coverage.

In the underlying cases herein, the directors and officers allegedly committed such distinct negligent acts as:

---

**1.** MGIC has cited *Healy Tibbits Construction Co. v. Foremost Insurance Co.*, 482 F.Supp. 830 (N.D.Cal.1979); *Signal Companies v. Harbor Insurance Co.*, 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980); *Gribaldo, Jacobs, Jones & Assoc. v. Agrippina Versicherunges, Ag.*, 3 Cal.3d 434, 91 Cal.Rptr. 6, 476 P.2d 406 (1970); and *Continental Casualty Co. v. Phoenix Construction Co.*, 46 Cal.2d 423, 296 P.2d 801 (1956).

In *Healy Tibbits*, the court decided that the policy did not provide coverage. Therefore, the insurer had no duty to defend. 482 F.Supp. at 837. The policy in *Signal Companies* was for excess liability, so that the insured would re-

ceive the protection of a defense from the primary carrier in any event; the policy was differently worded; and the insured had not obtained the excess carrier's consent to incur costs. 165 Cal.Rptr. at 804, 612 P.2d 904. *Agrippina* involved an indemnity, not a liability policy. The facts of *Continental Casualty* are not in point at all.

**2.** *Accord,* Johnston, "Corporate Indemnification and Liability Insurance for Directors and Officers," 33 *Business Lawyer* 1993, 2023 (1978) (Lloyd's policy similar in pertinent part to MGIC policy).

(1) voting at separate times to authorize spot loans to home buyers;

(2) authorizing five separate, unrelated large condominium project loans;

(3) ordering the move and renovation of corporate headquarters without having sufficient funds therefor.[3]

In support of their position that more than one "loss" occurred, the insureds cite *St. Paul Fire & Marine Ins. Co. v. Hawaiian Ins. & Guaranty Co.*, 2 Haw.App. 595, 637 P.2d 1146 (1981), in which separate medical malpractice claims were brought for separate acts causing one death. The separate claims eventuated in the entry of one judgment. The policy provided a ceiling on liability for "each claim". It was held that each "claim" for a negligent act was separate, due to the legal definition of the word "claim".[4]

This case illustrates that one overall result—in the instant case, the collapse of First Savings—can result from several distinct acts or sets of acts, each of which gives rise to a separate claim. The failure of First Savings was not itself a "loss" under the policy, but rather was caused by one or more separate financial "losses" over time.

■ By its policy, MGIC offered more than one coverage option to the officers and directors. The directors could have chosen an option with a ceiling of $1 million overall, rather than one affording $1 million coverage per loss, as they did.[5] Therefore, it must have been contemplated that there could be more than one loss. Coverage should be no less merely because several losses together caused the collapse of the institution. If the same losses had occurred, but had not resulted in the collapse of the institution, coverage should be

no greater. The amount of coverage was not so written as to vary depending on the effect of the losses. Several "losses" do not become one "loss" solely because the business suffering the losses failed.

The policy states in section 4(d):

Claims based on or arising out of the same act, Interrelated acts, or one or more series of similar acts, of one or more of the Directors or Officers shall be considered a single Loss....

■ This court holds that First Savings suffered more than one separate "loss" within the meaning of section 4(d). As an example, the directors and officers waived or eliminated the 90% participation requirement on the Likini West condominium loan, immediately obliging First Savings to fund the entire $3.8 million loan commitment.[6] This caused the corporation's net worth to decline.

The acts which allegedly caused this loss were plainly separate from and unrelated to those losses which allegedly arose out of the directors' spot lending policy of making loans to individual home buyers, or to the losses allegedly arising out of the directors' decisions on expenditure of funds on the renovation and move of corporate headquarters. Nor did those separate acts form part of a series of similar acts. They were distinct and dissimilar business decisions by the directors and officers. Thus, the several declines in net worth allegedly caused thereby were separate "losses" under the policy.

There is coverage under section 4(d), quoted above, for unrelated acts not part of a series which gave rise to separate losses, each of which contributed to the bank's failure.

---

3. Arthur Young report, plaintiffs' Exhibit 9; supplemental affidavit of Jerrold Guben, Exhibit 10, paragraphs 5–7; plaintiffs' supplemental memorandum, appendices 1 and 2.

4. *See also Kent Ins. Co. v. Capitol Maintenance*, 433 So.2d 1295 (Fl.App.1983) (damage to each of several vehicles in a paint-spraying operation constituted separate loss); *Burlington County Abstract Co. v. QMA Assoc.*, 167 N.J.Super. 398, 400 A.2d 1211 (App.1979) (per loss deductible

applied to each of 84 condominium owners' separate claims where title abstractor's many omissions over two-year period damaged each separately).

5. Plaintiffs' Exhibits 4 and 5.

6. Appendix 2 to plaintiffs' supplemental memorandum, at 4.

This court's holding that the institution suffered more than one "loss" is all that is needed to require MGIC to begin paying the insureds' attorneys' fees out of the "second" million dollar coverage.[7]

### III

 MGIC has refused to state whether it believes the above-quoted section 4(d) of the policy applies. Instead, it seeks to have this court dismiss the suit as premature, arguing that the court is in no position to decide coverage because it does not know what negligent acts the insureds did, and when. This will not be established, it argues, until the underlying *FSLIC* and *FHB* cases proceed to judgment or settlement. It cites as precedent this court's decision in *Alexander v. MGIC*, Civil No. 80–0155, May 11, 1981.

- However, as outlined above, the issue of coverage can be determined to the extent needed at this time by examining the factual allegations in the underlying cases against the insureds. *Healy Tibbits, supra*, 482 F.Supp. at 837.

In *Alexander v. MGIC*, this court dismissed a suit by two of the other insured directors. It was dismissed without prejudice, apparently because the issues were held to be unripe.

However, there was only token response to the motion to dismiss: a one-page memorandum, citing no cases, simply noting that the underlying suit against the two insured directors had been dismissed. Thus, there was no resolution of the issues presented here.

MGIC argues, further, that there is no justiciable case or controversy here. However, that argument was answered in *ACandS v. Aetna Casualty & Surety Co.*, 666 F.2d 819, 823 (3d Cir.1981). The court in that case held that the issue of whether liability insurance coverage existed constituted a justiciable case or controversy before the insured's liability was determined

in an underlying suit, due to the constant possibility of a settlement, which the insurer would have been obligated to pay. The live case or controversy was not mooted by the fact that a judgment for defendant insured in the underlying suit would moot the coverage issue. In dictum, the court implied into the policy a good faith obligation on the part of the insurer to attempt settlement.

### IV

MGIC next argues that indispensable parties—the remaining officers and directors—are not before the court, raising the possibility of inconsistent adjudications binding MGIC. MGIC maintains that even if it won on the merits, the nonjoined insureds, First Hawaiian, or the FSLIC, could then force relitigation of the very issues involved here.

MGIC cites *Ranger Ins. Co. v. United Housing of New Mexico*, 488 F.2d 682, 683–84 (5th Cir.1974), in which the court dismissed an insurer's declaratory judgment action against insureds involved in a fatal airplane crash because a judgment for the insurer would prejudice the nonjoined claimants' interests by, for example, forcing them to contend with the effect of *stare decisis*.

The insureds respond by pointing out that they would have no adequate remedy if their suit were dismissed for nonjoinder of indispensable parties. They suggest that the court make other officers and directors, First Hawaiian, or FSLIC parties to this action; that is, involuntary plaintiffs. So long as diversity is not affected, plaintiff insureds do not object to joinder. MGIC states in its opposition memorandum, at 18, that diversity would not be affected.

Further, FSLIC has filed an *amicus* brief supporting a broad construction of the insurance policy. The remaining directors and officers are on notice that this suit has been brought.

---

**7.** It does not preclude a future finding of other distinct "losses", an issue this court need not now reach.

As this is a declaratory judgment action, this court has great flexibility in framing its relief so as to avoid prejudice to absent parties.[8]

This court need not reach the issue of whether joinder of the other insured directors, First Hawaiian, and the FSLIC would be preferable to dismissal, for these parties are not indispensable.

The other insured directors were not injured because MGIC has continued to pay their defense costs while declining to pay plaintiffs'.[9] Also, the other directors may have participated in different acts, requiring separate determination of coverage based on different factual allegations in the underlying suits.

Nor are plaintiffs in the underlying *FHB* and *FSLIC* cases indispensable parties. The presence of the injured claimant is not required in a suit to determine an alleged tortfeasor's insurance coverage. *Connolly v. Great Basin Ins. Co.*, 6 Ar.App. 280, 431 P.2d 921, 927 (1967).

## V

Finally, the insureds seek a ruling that MGIC has breached its duty of good faith and fair dealing. Such a covenant is implied into each insurance contract.[10]

Here, MGIC has refused to affirm or deny coverage, tender defense costs when due, or enter into settlement negotiations. The insureds argue that MGIC at least has a duty to ascertain, from the allegations in the underlying cases as they develop, the number of separate causes of action or distinct underlying sets of factual circumstances therein (for purposes of the multiple loss issue discussed above) and conduct settlement negotiations with the resulting coverage in mind.

An insurance company has a duty implied in law to conduct good faith settlement negotiations whether or not the policy explicitly requires it to defend.[11] MGIC has violated this duty.

For the above reasons, it is hereby ORDERED that Plaintiffs' motion for summary judgment is GRANTED.

---

8. *See generally* 7 Wright & Miller, *Federal Practice & Procedure* (1972) section 1616, & 1983 supp.

9. Affidavit of Jerrold Guben, attached to plaintiffs' supplemental memorandum.

10. *E.g.*, *Crisci v. Security Ins. Co.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967).

11. *ACandS, supra.*