LANDICO, INC., Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent.

No. C9–96–1727.

Court of Appeals of Minnesota.

Feb. 25, 1997.

Bruce C. Recher, Scott A. Neilson, Henson & Efron, P.A., Minneapolis, for Appellant.

Nancy C. Coon, Eden Prairie, for Respondent.

Considered and decided by DAVIES, P.J., and HUSPENI and SHORT, JJ.

## OPINION

HUSPENI, Judge.

Appellant Landico, Inc. sued respondent American Family Mutual Insurance Company for breach of an insurance contract. On the parties' cross-motions for summary judgment, the district court denied Landico's motion for summary judgment and granted summary judgment in favor of American Family on the ground that the parties' policy unambiguously restricts Landico's recovery to the $100,000 policy limit. On appeal, Landico seeks review of the district court decision finding the insurance policy unambiguous and limiting Landico's recovery. We affirm.

## FACTS

On January 4, 1993, Landico bought an American Family insurance policy covering, among other things, employee dishonesty. The policy provides employee dishonesty coverage of $100,000 per occurrence for an annual premium of $659. Landico paid the first premium of $659 for coverage from January 4, 1993, to January 4, 1994, and paid a second premium in the same amount for coverage from January 4, 1994, to January 4, 1995. American Family issued Landico only one new policy form, one declaration sheet, and one policy number for the entire period of Landico's coverage. In addition, the same "Crime General Provisions" and "Employee Dishonesty Coverage Form" remained in force throughout American Family's coverage of Landico.

Section B.10. of the Crime General Provisions on "Non–Cumulation of Limit of Insurance" provides that:

Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

Section D.3. of the Employee Dishonesty Coverage Form defines "occurrence" as

all loss caused by, or involving, one or more "employees," whether the result of a single act or a series of acts.

Section B.13.b. provides that American Family "will pay only for loss that [Landico] sustain[s] through acts committed or events occurring during the Policy Period." The Declarations sheet sets forth the annual premium due with the notation "POLICY PERIOD FROM 1–04–93 TO 1–03–94."

A Landico employee repeatedly embezzled from Landico throughout 1993 and 1994. The parties do not dispute that this conduct and Landico's resulting losses came within Landico's Employee Dishonesty Coverage. They do dispute, however, the amount of payment due Landico under the policy coverage. Landico filed claims with American Family for embezzlement losses of $47,424.48 in 1993 and $102,697.88 in 1994. American

Family paid Landico only $100,000 on its claims.

Landico sued American Family for payment on Landico's $47,424.48 claim. American Family moved for summary judgment against Landico, arguing that the occurrence and noncumulation provisions of the policy restrict Landico's recovery to the policy limit of $100,000. The district court agreed and granted summary judgment to American Family on the ground that the policy unambiguously limits Landico's recovery to $100,000.

## ISSUES

1. Did the district court err in concluding that the "policy period" and "occurrence" definitions, when read together, do not create ambiguity in the policy?

2. Did the district court err in concluding the noncumulation clause unambiguous?

## ANALYSIS

■ "The interpretation and construction of an insurance contract is a question of law, subject to de novo review." *Haarstad v. Graff,* 517 N.W.2d 582, 584 (Minn.1994) (citation omitted). Because the parties dispute only the interpretation of their insurance contract, we review the district court's decision de novo.

### I.

Landico argues that the "occurrence" definition, when read in combination with the policy period definition, creates an ambiguity requiring this court to apply the occurrence definition separately for each year of coverage. Landico asserts that the definition of occurrence is ambiguous in light of the policy language that provides coverage for acts occurring "during the policy period" and defines the policy period as one year.

■ The language of an insurance policy will be held ambiguous only if it is reasonably subject to more than one interpretation. *American Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire & Cas. Co.,* 551 N.W.2d

224, 227 (Minn.1996). "However, the court must 'fastidiously guard against the invitation to "create ambiguities" where none exist.'" *Id.* (quoting *Columbia Heights Motors v. Allstate Ins. Co.,* 275 N.W.2d 32, 36 (Minn. 1979)). In order to effectuate the parties' intent, "[t]he policy must be read as a whole, and unambiguous language must be accorded its plain and ordinary meaning." *SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 311 (Minn.1995) (citation omitted).

Here, the policy defines "occurrence" as "all loss caused by, or involving, one or more 'employees,' whether the result of a single act or a series of acts." As Landico correctly points out, subsection b of the policy period definition provides that American Family "will pay only for loss that you sustain through acts committed or events occurring during the Policy Period," and the declarations sheet lists "POLICY PERIOD FROM 1–04–93 TO 1–04–94." Contrary to Landico's assertions, however, neither these provisions nor any others in the policy show an intent of the parties to restrict the definition or application of "occurrence." We decline to read such intent into the policy in the absence of clear language directing us to do so. The policy unambiguously limits recovery on claims arising from one employee's misconduct [1] to the stated policy limit.

### II.

■ Landico further argues that the policy's noncumulation clause in itself creates an ambiguity that this court must resolve in favor of Landico, contending that *Prairie Land Coop. v. Millers' Mut. Ins. Ass'n of Illinois,* No. C2–91–1503, 1992 WL 20705 (Minn.App. Feb.11, 1992), compels a finding that the noncumulation provision here is ambiguous in itself. We disagree. We note first that unpublished cases of this court are not precedential and are at best of persuasive value. *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn.App.1993). Second, the *Prairie Land* finding of ambiguity in the noncumulation provision was mere dictum, because the decision in that case turned on whether the noncumulation clause and the

---

1. As recognized by American Family at oral argument, $100,000 in coverage would extend to each employee independently engaged in misconduct.

declarations sheets *together* created ambiguity in the policy, and not whether, as here, the noncumulation provision alone was ambiguous. Third, and most important, although the policy here contains a noncumulation clause substantially similar to the noncumulation clause found ambiguous in *Prairie Land,* the facts of the two cases are distinguishable in one critical respect: here, unlike in *Prairie Land,* the policy includes an "occurrence" definition.

■■■ Where possible, courts should interpret insurance policies so as to give effect to all of their provisions. *Steele v. Great West Cas. Co.,* 540 N.W.2d 886, 888 (Minn. App.1995), *review denied* (Minn. Feb. 9, 1996). A court should not adopt a construction of a policy that neutralizes one provision if an alternative construction exists that gives effect to all the policy provisions and is consistent with the parties' general intent. *Employers Reinsurance Corp. v. Caswell,* 490 N.W.2d 145, 148 (Minn.App.1992), *review denied* (Minn. Nov. 17, 1992). "[O]nly if more than one meaning applies within that context does ambiguity arise." *Board of Regents v. Royal Ins. Co.,* 517 N.W.2d 888, 892 (Minn. 1994).

■■■ Here, the "occurrence" definition, which we have already found unambiguous, limits Landico's recovery for one employee's theft over the entire period of coverage to the policy limit of $100,000. As a result, the "occurrence" definition here parallels the first possible interpretation of the noncumulation clause in *Prairie Land* (insurer is liable for only $100,000 for any one employee's theft over the entire course of coverage). We will not strain to create an ambiguity by totally reading out of the policy the "occurrence" provision. In order to give effect to all of the policy provisions in this case, the only reasonable interpretation of the noncumulation clause is that if no claim is filed in a given one-year period, Landico cannot accumulate liability limits and claim $200,000 coverage in the next year.[2] Thus, there is no ambiguity.

■■■ Nor does *Columbia Heights Motors* compel a finding that the district court erred in finding the noncumulation clause unambiguous. In *Columbia Heights Motors,* the court found that use of a noncumulation provision in an "aggregate" insurance policy rendered the policy ambiguous. *Columbia Heights Motors,* 275 N.W.2d at 36. This case is distinguishable from *Columbia Heights Motors,* however, because here the policy does not include an aggregation provision so as to make the policy ambiguous. The district court noted that there is no reference to a limitation on annual liability to conflict with its noncumulation clause. Accordingly, we find *Columbia Heights Motors* inapposite.

Finally, to the extent Landico argues that its reasonable expectations regarding the scope of coverage were frustrated, we find the argument to be without merit. There are no "hidden exclusions" in a policy provision purporting to describe covered hazards. *Cf. Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 278 (Minn. 1985) (noting applicability of reasonable expectations doctrine "where major exclusions are hidden in the definitions section" of the policy). On the contrary, "occurrence" is unambiguously defined. It would be an unwarranted extension of the doctrine of reasonable expectations for this court to infer additional language in the "occurrence" clause or to expand the clear definition in such a way as to meet what Landico describes as its "reasonable expectations."

## DECISION

The policy unambiguously limits the insurer's exposure regarding *any one* employee's theft to $100,000 notwithstanding the fact the thefts of that one employee may continue for several years. The district court properly granted summary judgment to respondent thereby limiting respondent's exposure to

**2.** The occurrence definition, in contrast, limits recovery across multiple years of coverage. Thus, the occurrence definition and the noncumulation clause work in conjunction with each other to restrict Landico's recovery. The noncumulation clause limits recovery vertically, within each year of coverage, while the occurrence definition limits recovery horizontally, across multiple years of coverage.

$100,000 for one employee's theft over a two-year period.

**Affirmed.**

DAVIES, Judge (dissenting).

I respectfully dissent.

The issue in this case is: Is insurance coverage normally a series of one-year policies, each subject to its own annual limit, or does coverage come, instead, as a long-term policy with a single, perpetual limit? And how does the answer to the foregoing question affect the recovery for a multi-year embezzlement? The answer we give is significant, for the phrasing and, I think, marketing of the policy in this case appears to be typical of most policies available to insurance purchasers.

The majority relies primarily on the fact that the definition of "occurrence" does not include the phrase "during the policy period." But the policy itself is pervasively constructed on the idea of policy periods. (The phrase "policy period" itself appears at least five times.)

Most to the point, I read the "occurrence" definition as incorporating "policy period" from the description of coverage in clause B.13., which reads: "[W]e will pay only for loss that you sustain through acts committed or events occurring during the Policy Period." In light of this coverage clause, it would be redundant to repeat the phrase "during the policy period" in the definition of "occurrence."

The limit of employee dishonesty coverage on the declarations page is $100,000, and the term of that coverage is a policy period from "01–04–93 to 01–04–94." Therefore, to calculate the applicable coverage with a multi-year occurrence, the loss must be divided into the separate losses occurring within each policy period. In this case, $100,000 of a loss in one policy period totalling $102,000 should be covered, as should all of the $47,000 loss occurring in the previous 365–day policy period.

The fact that the insurer prepared a single declarations page for the policy—a fact noted by the majority—is nothing but a clerical procedure. The declarations page issued with the first year's policy was simply incorporated, for all terms except duration, into subsequent policies—the policy for the second (and third) year's coverage. The declarations page cannot be a perpetual declarations page as to the duration of coverage because it explicitly states a policy period of 365 days *in 1993–94*. Taken literally, this would leave the insured without any coverage for the following 365 days (in 1994–95) or for any subsequent 365–day period. The insurer, for clerical efficiency, simply carries forward the substance of the declarations page and by reference adopts it as appropriate to each new 365–day policy period.

\*     \*     \*     \*     \*     \*

To avoid an adverse impact on the insurance marketplace, the policy must be read as I propose. To read this standard policy as the majority suggests makes it advisable for insureds to change insurers annually. That would be absurd.

In addition, the majority's reading denies to insureds the coverage they intended to purchase. Insureds pay premiums with the expectation that losses in the applicable policy period will be covered up to $100,000. If that coverage is denied them on a technical reading of the policy, the insured does not get what has been paid for.

In contrast with the court's decision, the result I suggest is consistent with an insureds' reasonable expectations under relevant case law. In *Okada v. MGIC Indem. Corp.*, 608 F.Supp. 383 (D.Haw.1985), *rev'd in part on other grounds*, 823 F.2d 276 (9th Cir.1986), the plaintiffs, directors, and officers (directors) of a savings and loan association sought an order declaring their rights under a directors' and officers' policy. 608 F.Supp. at 385. The policy limited the insurer's liability to $1,000,000 per qualifying "loss" incurred by the directors. *Id.* at 387. The court addressed the issue of whether the directors' allegedly negligent acts caused one "loss" or a series of losses for the purposes of determining the insurer's liability. *Id.* at 388. The court held that the savings and loan suffered more than one "loss" due to the directors' negligence and that the insurer

was accordingly liable beyond $1,000,000. *Id.* at 389.

Minnesota courts have reached similar results in suits on policies covering pollution costs. In *Northern States Power Co. v. Fidelity & Cas. Co.*, 523 N.W.2d 657 (Minn. 1994), NSP sued to recover on a series of comprehensive general liability policies. 523 N.W.2d at 658–59. Although the damage at issue occurred continuously over a period of years, the *NSP* court permitted yearly recoveries under the multiple policies that were in effect during the course of pollution. *Id.* at 664. The court held that there had been

> one occurrence during the policy period of each applicable [insurance] policy and NSP must assume the retained limit with respect to each of these policies. [The insurance company] is *liable for the excess portion of the damages allocated to each policy up to the policy limit for one occurrence.*

*Id.* (emphasis added). The court, thus, permitted recovery under each of the consecutive insurance policies up to the policy limit on each policy.

Further, this court has "reject[ed] the argument that there can be only one occurrence in a case where [loss] results from continuous or repeated conditions of exposure." *Industrial Steel Container Co. v. Fireman's Fund Ins. Co.*, 399 N.W.2d 156, 159 (Minn.App.1987), *review denied* (Minn. Mar. 18, 1987).

Here, Landico incurred losses due to repeated theft by one of its employees. That Landico's losses resulted from a series of thefts does not, under *NSP,* preclude a finding of more than one occurrence for the purposes of determining American Family's liability.

\*　　\*　　\*　　\*　　\*　　\*

It might be suggested that the insured has an obligation to discover an embezzlement that continues beyond a single year. The obligation to discover is, however, explicitly stated in the policy. Clause B.3. provides:

> Discovery Period for Loss: We will pay only for covered loss discovered no later than one year from the end of the policy period.

And clause B.5.d. provides:

> If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

In no circumstance does the employer have an obligation to discover embezzlements more promptly than within 12 months in order to be eligible for coverage. Here, the loss was discovered well within the time specified. I see no reason why this loss should be an exception to these explicit timeliness rules.

\*　　\*　　\*　　\*　　\*　　\*

Finally, I find the non-cumulation clause of the policy irrelevant to the problem before us.[3] That provision prohibits "banking" of unused insurance; that is, insurance unused during one policy period may not be carried forward to a subsequent policy period to increase the limit of coverage so as to reimburse a loss that exceeds the policy's policy-period limit.[4]

We have here exactly the opposite problem; $100,000 of coverage has been fully utilized in one policy period and, thus, the question is not whether unused coverage carries over to the next period. The question is whether using it up in one period uses it up for the next policy period as well. It does not.

I would reverse.

---

**3.** Clause B.10. of the policy states:
Non–Cumulation of Limit of Insurance: Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**4.** My position is consistent with the reading given the clause in this court's unpublished decision *Prairie Land Coop. v. Millers' Mut. Ins. Ass'n of Illinois,* C2–91–1503, 1992 WL 20705 (Minn. App. Feb. 11, 1992).